**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Anthony R. Lim</u>

v.                                      Case No. 04-cv-079-PB

<u>Phil Stanley, Commissioner,</u>
<u>New Hampshire Department of</u>
<u>Corrections, et al.</u>

<u>MEMORANDUM AND ORDER</u>

Anthony R. Lim, a prisoner in the custody of the New
Hampshire Department of Corrections ("DOC"), brings this suit
pursuant to 42 U.S.C. § 1983, alleging that Commissioner Phil
Stanley and various prison officials infringed on his First
Amendment right to petition the government for redress of
grievances.[1]  Defendants have moved to dismiss, arguing that Lim
has failed to state a cognizable claim.  For the reasons set
forth below, defendants' motion is granted.

---

[1]  Several of Lim's claims were dismissed when I adopted the
Magistrate Judge's October 7, 2004 Report and Recommendation.
Lim's remaining claims are against Unit Manager Robert Thyng,
Warden Bruce Cattell, and attorney John Vinson, as individuals,
and Phil Stanley in his official capacity.

# I. BACKGROUND[2]

## A.  Procedural History

By order dated November 5, 2004, I approved Magistrate Judge James R. Muirhead's October 7, 2004 Report and Recommendation ("R&R"), which found Lim to have stated viable claims against defendants for violating his right to petition the government for a redress of grievances and conspiracy.  Or. Permitting Pl.'s Claim 2-3.  Defendants moved to dismiss on April 1, 2005, arguing that "a prisoner's right to petition the government for redress is the right of access to the courts" and that "there is no constitutional right to a prison grievance process," and, therefore, that "a claim that a prison official failed to address an inmate's grievance is not cognizable under § 1983."  Defs.' Mot. to Dismiss ¶ 3.

## B.  The Facts as Alleged

This case arises out of a confrontation Lim had with Corporal Elmer Servier on April 24, 2003, while he was housed at

---

[2]  Because this is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I take the facts as they are alleged in the plaintiff's complaint.  See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 9 (1st Cir. 2004).

the Northern New Hampshire Correctional Facility ("NCF").  Upon
exiting the NCF dining hall, Lim closed a perimeter door and was
suddenly accosted from behind by Servier.  Unknown to Lim,
Servier had been standing three to five feet away from the door
when Lim exited.  Servier alleged in a verbally abusive manner
that Lim had slammed his hand in the door.  Lim attempted to
remain calm and politely requested that Servier refrain from
being disrespectful and swearing.

After it became apparent that Servier was not going to
desist, Lim informed Servier that he was going to file a
complaint against him for violation of the DOC's Policy and
Procedure Directive ("PPD") 2.16.[3]  Servier then responded that
he intended to write Lim up for purposefully injuring an officer.

---

[3]  PPD 2.16(III)(c), entitled "Rules and Guidance for DOC
Employees" states in relevant part, "it is expected that all
employees, while working, will interact with inmates, members of
the public, co-workers and management in a positive, supportive
and cooperative way."  PPD 2.16(V)(A)(28), governing policy
violations for "Inappropriate Conduct or Language," dictates that
"[e]mployees will refrain from demeaning and belittling talk,
horseplay, boisterous conduct and profane or indecent language in
dealing with persons under departmental control and within (sic)
the public view.  Failure to do so will be considered a violation
of this policy."

Following the incident, Lim returned to his cell and immediately completed three inmate request slips ("IRS").  The first, addressed to Unit Manager Thyng, requested three grievance forms, which Lim planned to use to report Servier's behavior.[4] Lim sent the two other request slips to the Investigations Office, requesting access to Servier's injury reports[5] and the videotape of the security camera located in the dining hall.  Lim contends that the video would have captured the incident and exonerated him.

That evening, Lim was called to the Investigations Office, where he received a disciplinary infraction notice for "causing

---

[4]  PPD 1.16 governs "Grievances and Complaints by Persons Under DOC Supervision."  It is intended "[t]o provide an administrative process through which inmates seek formal review of an issue related to any aspect of their confinement if less formal procedures have not resolved the matter. . . ."  PPD 1.16(III) allows an inmate to grieve any issue concerning allegations of mistreatment by a DOC employee or a violation of any PPD by a DOC employee.

[5]  PPD 10.1(III) explains that "[t]he Department of Corrections requires that each employee must report all work related accidents or injuries.  This includes injuries that may not necessitate medical intervention as well as those that do."  PPD 10.1(V) further requires that the injury report be made at the time of the injury and include detailed information about the nature and severity of the injury, and any witnesses who may be able to identify the cause of the injury.

-4-

bodily injury."  After denying his guilt, Lim attempted to explain that he could not have intentionally harmed Servier because he had not seen him near the door.  Lim then provided the investigating officer, Lieutenant Williams,[6] with the names of four witnesses to support his version of the event.

On April 28, 2003, Thyng responded to Lim's request.  Thyng told Lim that he first needed to try to resolve the matter with Servier by using an IRS and, if that failed, to then file a request for grievance form, describing in greater detail the exact nature of the problem.  By this time, however, disciplinary charges had already been filed against Lim, which Lim felt precluded resolution of the conflict with an IRS.  Lim attempted to explain this by sending three more request slips to which Thyng failed to respond.

Lim was called to the Investigations Office again on April 29, 2003.  At that time, Lim spoke with Sgt. Hammer about his requests for the video and the medical reports.  Both requests were denied by Hammer who cited "security concerns" as the basis for his decision.

_____

[6]  The record does not reveal Lieutenant Williams' first name.

Lim's disciplinary hearing was held on April 30, 2003. Hearings Officer Paul Fourtier presided and Lieutenant Williams, who had conducted the investigation, served as the prosecutor. Although Lim referred Fourtier to the aforementioned videotape and injury report, Fourtier failed to review that evidence and made no written statement in support of his decision not to do so.[7]

Following the hearing, Fourtier considered the written statements of Servier, Corporal William Wyatt, and Lim's four witnesses,[8] and found Lim guilty of causing bodily injury to an officer.[9]  Lim received 10 days in punitive segregation, 40 days loss of canteen, 40 days loss of recreation, and 50 hours of extra duty as punishment.  After being handcuffed and placed in a

---

[7]  "Hearings Officers may rule as to whether or not to accept evidence, and their decision to exclude evidence will be final.  The reasons for denying the request will be stated in writing and on the record."  PPD 5.25(IV)(D)(5).

[8]  The witnesses were inmates Montriville Graham, Eric Knight, Marc R. Adams, and Martinez Thomas.

[9]  Lim claims that he was also found guilty of conspiring to cause injury to Corporal Servier.  The Hearings Result form attached to Lim's complaint, however, belies this point.  It indicates that the only guilty finding was for "causing bodily injury."

holding cell, Lim was transported to the state prison facility in Concord to serve his time in punitive segregation.

After arriving in Concord on May 1, 2003, Lim submitted a request slip to Warden Cattell appealing Fourtier's guilty finding.  In his request, Lim cited the fact that he was unable to offer the videotape footage or Servier's medical record at the hearing, that the prison regulation that mandates that all perimeter doors be shut upon exiting, and the fact that he had never caused anyone harm during his six years of incarceration as the three bases for reversal.  Cattell denied Lim's request on May 9, 2003, on the ground that Lim had failed to state a basis for an appeal.

Lim appealed Cattell's decision to the DOC Commissioner's office on May 18, 2003.  To this appeal, Lim attached eight pages of supporting information not previously included in the appeal to Cattell.  On June 10, 2003, attorney John Vinson, acting on behalf of the Commissioner, responded that "it would be premature to appeal to [the Commissioner] with information which you did not provide to the Warden.  Please enclose the Warden's response to your appeal."  Id.

To comply with this instruction, Lim sent Vinson a copy of

–7–

Cattell's denial with a more detailed explanation of his argument for relief on June 12, 2003.  On July 7, 2003, Vinson again denied the appeal on the grounds that there was sufficient evidence to support the guilty finding.  Vinson opined that a further offer of proof would be necessary to indicate how the denied evidence would have exonerated Lim.  Lim responded to Vinson's denial on July 16, 2003, contesting Vinson's interpretation of the facts of the case.  Unmoved, Vinson again denied Lim's request for appeal on August 18, 2003.

Around the same time, Lim and Vinson also engaged in a separate correspondence regarding Lim's allegation that his due process rights had been violated.  This exchange began with Lim's August 2, 2003 IRS, in which he sought a reversal and expungement of the disciplinary conviction on due process grounds.  Vinson responded to this request on August 13, 2003, informing Lim that he needed to "list the alleged procedural due process violations with prejudice" before any action could be taken.  Lim attempted to comply with this request on September 8, 2003 by providing specific information regarding the evidence denied to him and the likelihood that it would have exonerated him.

Vinson dismissed these allegations on October 13, 2003,

claiming that the excluded evidence would have had little, if any, impact on the outcome of Lim's disciplinary hearing.  Vinson further asserted that because Lim set in motion a chain of events that resulted in an injury to an officer, the guilty finding was justified.

Upon completion of his punitive segregation, Lim received notice that he was being upgraded from C3 to C4 level security status.  This elevated security rating entailed new restrictions.  As a consequence, Lim would not be permitted to return to NCF, but would instead remain housed at the Concord facility in the Closed Custody Unit ("CCU"), and would not be eligible for consideration of reclassification to C3 for another six months.

While housed at CCU, Lim received the grievance forms he had previously requested.  On June 1, 2003, thirty-eight days after the April 24 incident, Lim completed two grievance forms and submitted them to Warden Cattell for resolution.  Cattell denied Lim's requests on June 23, 2003 on the ground that they were untimely.  Lim responded by filing a grievance against Thyng, alleging that Thyng was derelict in his duties by failing to

provide the requested grievance forms in a prompt manner.[10]  Lim

claimed that Thyng had a duty to provide such grievance forms

pursuant to PPD 1.16.[11]  In a response dated July 9, 2003,

Cattell informed Lim that he had investigated the allegation and

Thyng denied ever receiving a request slip regarding Lim's

complaint against Servier.

A subsequent grievance filed by Lim against Thyng for making

a "false official statement" was rejected by Cattell on July 11,

2003.  Cattell explicitly stated that he did not believe Lim, and

that any further correspondence on the issue would be considered

an abuse of the system.  Lim nevertheless appealed all of

---

[10]  An employee is in dereliction of duty when he or she
"willfully or negligently fail[s] to perform [his or her duties],
or when [he or she] performs them in a culpably inefficient
manner."  PPD 2.16(V)(A)(3).  "A duty may be imposed by
regulation, lawful order, policy statement, or custom."  Id.
"Any employee who is derelict of duty is in violation of [the
policy setting forth the rules and guidance for DOC employees]."
Id.

[11]  PPD 1.16 defines the request slip and grievance system
as a method for providing persons an avenue to complain about
"matters which seem to impinge on their rights or to redress
wrongs both through administrative and judicial channels."  PPD
1.16(III)(D).  In addition, it mandates that "a request slip
regarding any issue must be received within thirty (30) calendar
days of the date on which the event complained of occurred," to
be considered.  PPD 1.16(IV)(1).

Cattell's decisions to the Commissioner.  Vinson responded by affirming Cattell's previous decisions and indicating that Lim could have used a request slip instead of a grievance form to timely communicate his complaints against Servier.

## II. <u>STANDARD OF REVIEW</u>

In considering a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), I must accept as true the plaintiff's well-plead factual allegations, "draw all reasonable inferences [from the complaint] in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." <u>Martin v. Applied Cellular Tech.</u>, 284 F.3d 1, 6 (1st Cir. 2002). Where the plaintiff is *pro se*, his complaint will be held to "less stringent standards" than pleadings drafted by attorneys. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)(per curiam). Accordingly, in such cases, I am permitted to "intuit the correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).  Therefore, I will only

grant a motion to dismiss for failure to state a claim against a
*pro se* plaintiff when, under a liberal interpretation of the
facts alleged, he cannot recover under any viable theory.  <u>See</u>
<u>id.</u>; <u>Bessette v. Avco Fin. Servs.</u>, 230 F.3d 439, 443 (1st Cir.
2000).

I review defendants' motion with these principles in mind.


### III.  <u>ANALYSIS</u>

Lim charges that defendants are liable individually and as
conspirators for violating his right to petition the government
for redress of grievances.[12]  Both claims are based upon
defendants' alleged interference with Lim's right to pursue his
grievance against Servier by refusing to comply with his request
for grievance forms.  I address each claim in turn.

---

[12]  I have adopted the Magistrate Judge's characterization
of Lim's claims.  The Magistrate Judge informed Lim in the R&R
that, if he "objects to the identification of [his] claims, he
must do so by objection to [the] Report and Recommendation or by
properly moving to amend his complaint."  Report and
Recommendation (Doc. No. 9) at 13.  Because Lim failed to file
any such objections and did not file an amended complaint, I
analyze defendants' motion to dismiss with the understanding that
the Magistrate Judge properly characterized Lim's claims.  <u>See</u>
Fed. R. Civ. P. 72.

**A.    <u>Deprivation of Lim's Right to Petition the Government</u>**

The prison's grievance procedure is a hierarchal "three tiered system for filing a grievance."  PPD § 1.16(F).  Pursuant to its commands, inmate complaints regarding "all issues except appeals from disciplinary hearings," must be submitted on an inmate request slip within 30 days of the reportable incident. <u>Id.</u> at IV(A).  Only after an inmate has attempted to obtain relief through the request slip process will he be permitted to submit a grievance.  <u>Id.</u> at IV(B).  The exhaustion of the request slip process is so vital that "[a] grievance will not be accepted unless it is demonstrate[d] that the request slip process has been utilized."  <u>Id.</u> at IV(B)(2).  Accordingly, "[a]ttempts to by-pass the request slip system will simply be returned without action and ***will not be counted*** in determining whether the time requirement for submitting a request slip has been met."  <u>Id.</u> (emphasis in original).

Lim was apprised of these requirements on April 28, 2004, when Thyng responded to his initial request for grievance forms. In that response, Thyng attempted to explain that the complaint

against Corporal Servier needed to be filed with a request slip
before a grievance could be submitted.  Lim dismissed this
advice, however, under the erroneous belief that the commencement
of his disciplinary trial in some way warranted use of the
grievance forms.

Because Lim failed to heed Thyng's warning, he never
submitted an inmate request slip regarding his altercation with
Corporal Servier within the mandatory 30 day period.  <u>See</u> PPD §
1.16 IV(A)(1).  As a result, the grievance he filed was never
heard.  Hence, it was not the defendants' acts, but rather Lim's
misunderstanding of the PPD which prevented him from pursuing
his complaint against Servier.  Accordingly, Lim's claim for
infringement on his right to petition the government must be
dismissed.[13]

_____

[13]  Lim's claim fails even if I assume that defendants
thwarted his effort to prosecute a grievance against Servier.
While I recognize that "prisoners have the constitutional right
to petition the Government for redress of their grievances,"
<u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)(citation omitted), the
majority of courts have determined that that right is "not
compromised by the prison's refusal to entertain [a prisoner's]
grievance."  <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991).
There is simply no constitutional or statutory language that
permits a "legitimate claim of entitlement to a grievance
procedure."  <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988).
Denial of access to such procedures therefore will not ordinarily

**B.**   **Conspiracy Claim**

Lim also alleges that defendants conspired to deprive him of his right to petition the government.  <u>See</u> 18 U.S.C.A. § 241. Conspiracy claims of this sort, however, are contingent on the validity of the underlying substantive offense.  Consequently, because Lim has failed to plead a viable claim for infringement of his right to petition the government, this claim must be dismissed as well.

## IV. <u>CONCLUSION</u>

---

constitute a deprivation of a constitutional right so long as alternative means, such as a lawsuit, are open to an inmate to present his grievances.  <u>See</u> <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

The very limited circumstances in which circuit courts have permitted a § 1983 claim to proceed on a "deprivation of a right to grievance procedures" theory have invariably included some inference of retaliation.  <u>See</u> <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468 (11th Cir. 1989)(dismissal of an inmate's § 1983 claim, in which a violation of state-established grievance procedures was alleged, was invalid because the inmate averred that prison officials acted out of retaliation); <u>Jackson v. Cain</u>, 864 F.2d 1235, 1248-1249 (5th Cir. 1989)(lower court erred in determining that plaintiff had not stated a viable § 1983 claim by alleging that the guards retaliated against him for use of the prison's grievance procedure).  In these cases, it is the defendants' retaliatory motive in denying access to the grievance procedure that makes the claim viable.  Lim's complaint, as construed by the Magistrate, does not state a retaliation claim. Therefore, these cases do not support Lim's claim.

-15-

For the foreging reasons, I grant defendants' motion to dismiss.  (Doc. No. 19).  The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

July 22, 2005

cc: Anthony R. Lim, *pro se*
    Nancy J. Smith, Esq.